### SCHUBERT et al. v. MILLER et al.

### No. 5205.

Court of Civil Appeals of Texas. Texarkana.

June 30, 1938.

Rehearing Denied July 14, 1938.

Smith & West, of Henderson, and Pat J. Howe and Henry Yeager, both of Dallas, for appellants.

Tom L. Beauchamp and Kenneth C. Miller, both of Tyler, and K. C. Miller, of Marfa, for appellees.

HALL, Justice.

Appellees instituted this suit in the District Court of Rusk County against appellants to cancel an oil and gas lease covering the West 25 acres of Block 14, Joiner Subdivision of the Daisy Bradford 975-acre tract of land, for failure to develop same for oil and gas. Appellees alleged that Joiner, the original lessee of the 975-acre tract of land from Daisy Bradford, caused to be made a plat of same, dividing it into 21 blocks, which plat was recorded in the Deed Records of Rusk County; "that after making and recording of said map, the said C. M. Joiner, Trustee, as the holder of the lease on the properties hereinabove referred to (975-acre tract), conveyed or attempted to convey the oil, gas and mining lease on a portion of the 400-acre tract (this tract being a part of the 974-acre tract) designated as Block 14 and purporting to contain forty-six (46) acres, to various and sundry parties at as many different dates, the parties being too numerous to mention herein. Plaintiffs (appellees) allege further that by mesne purported conveyances the defendants (appellants) A. F. Schubert and Ed White claim to have acquired title to the oil and gas lease above referred to, or a portion thereof, and that they now assert some claim to the right and title to said property, the nature and extent of which is to these plaintiffs (appellees) unknown." In the alternative appellees sought damages for failure of appellants to develop the land in controversy. Appellees are now the fee owners of the land in controversy.

Appellants answered first with plea in abatement, stating that there were other parties (naming them) owning interests in said land who were not parties to the suit; that they are indispensable parties, this being a suit to cancel the oil and gas lease under which they hold. These parties named in the plea in abatement were thereafter cited by publication. Some of them answered, but those who did not answer were represented by Senator Joe Hill under appointment of the court. Subject to their plea in abatement appellants answered by general demurrer and general denial and certain defensive pleas to the effect (1) that the lease under which they held had been kept in force by wells drilled on the 900-acre tract of which the tract in controversy was a part; that the discovery well in the East Texas Field was drilled on the large tract, and numerous other wells had been drilled on the large tract; (2) that the tract was described in the original lease to Joiner as containing 975 acres when in truth it contained only 900 acres, and that Joiner, the original lessee, platted the East 400 acres showing 80 acres more than was actually in said tract, and which fact caused confusion among the purchasers of said platted subdivision, among whom were appellants; that appellants had made several efforts to drill the block assigned to them, but had been prevented by threatened injunctions from adjoining landowners; (3) that the 25 acres in controversy has been developed through mistake or otherwise by the Bond Oil Company by drilling two producing oil wells thereon, which inured to the benefit of appellees.

Trial was to the jury which, in obedience to a peremptory instruction, returned a verdict against appellants who prosecute this appeal.

By several propositions appellants raise the question of want of necessary parties, which, they assert, present fundamental error. This is a suit for cancellation of an oil and gas lease insofar as it affects the 25-acre tract of land in controversy. Joiner, the original lessee, purchased an undivided interest in the minerals in the entire 900-acre tract from Daisy Bradford, the original owner of said land. At the date of the trial either he or his assignees owned this undivided mineral interest in the land in controversy which was subject to the original lease in the manner following: "Said land being now under an oil and gas lease executed in favor of C. M. Joiner, Trustee, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes $1/4$ of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease." Joiner was not a party to this suit in the court below, nor was any one claiming the interest of Joiner a party to the suit. The mineral deed under which Joiner held conveyed to him a $1/32$ of the minerals in and under the entire 900-acre tract of land, but by the clause

copied above he was given a ¼ interest in the royalty under the lease now sought to be cancelled insofar as it affects the 25 acres here. The mineral deed under which Joiner held his undivided interest in the 900-acre tract provided also that in the event the lease from Daisy Bradford to him was cancelled or forfeited, then his interest would be and become a 1/32 of the minerals in and under said land. It seems to us that there can be no doubt but that Joiner's rights in and to the minerals under the 25 acres here in controversy would be very materially affected in this: Under the lease as it now exists he would receive ¼ of the royalty from the entire 900-acre tract which includes, of course, the 25-acre tract here in controversy. Should this lease be cancelled and a new lease be given, his interest would be decreased eight times. Hoffman et al. v. Magnolia Petroleum Co. et al., Tex.Com.App., 273 S.W. 828. This would materially affect Joiner's mineral interest in the tract of land. It would destroy the rights of Joiner under the original lease covering the tract of land in controversy. In discussing a question very similar to the one here, the El Paso Court of Civil Appeals in the case of Gulf Production Co. v. Colquitt, 25 S.W.2d 989, writ denied Tex. Com.App., 52 S.W.2d 235, said (page 992):

"The individuals mentioned are certainly interested in the subject-matter of this suit. Their rights are inseparably and indivisibly connected with Mrs. Smith's rights. We do not see how a judgment in favor of Mrs. Smith for recovery of the minerals in the lands and cancellation of the leases as to her can possibly be enforced without adversely affecting the rights held by those individuals. The royalty is contingent upon production of oil and gas, and there can be no production thereof, except as a trespasser against Mrs. Smith, if the judgment herein stands.

"We regard these individuals as necessary parties in the strict sense. The suit should be abated unless they are joined." And authorities there cited.

In Sharpe v. Landowners Oil Ass'n, 127 Tex. 147, 92 S.W.2d 435, the rule is announced (page 436): "It is settled beyond all question in this state that in a suit to cancel a written instrument all persons whose rights, interests, or relations with or through the subject-matter of the suit will be affected by the cancellation are necessary parties."

We see no escape from the conclusion that Joiner's rights are seriously affected by the cancellation of the lease. It is highly probable, in our opinion, that a cancellation of the present lease and a re-lease of the premises to another party would diminish Joiner's royalty interest in and to the property in controversy eight times. Failure, therefore, of appellees to make Joiner a party to this cause of action necessitates a reversal of this case.

We have concluded also that should the testimony on another trial with respect to the development of the land in controversy for oil and gas be the same as on this trial, then an issue relative thereto should be submitted to the jury for determination.

The other propositions of appellants have been carefully examined and are either without merit or will not arise upon another trial, and are therefore overruled.

The judgment of the trial court is reversed and the cause remanded.