**A. V. STEELMAN et al., Appellants,**

v.

**Marshall ROSENFELD et al., Appellees.**

**No. 16636.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 26, 1965.

Rehearing Denied Dec. 24, 1965.

Saner, Jack, Sallinger & Nichols, H. Louis Nichols, Dallas, for appellants.

Strasburger, Price, Kelton, Miller & Martin, Robert H. Thomas, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

This action, in which a declaratory judgment was sought, was originally instituted by Marshall Rosenfeld and Julius Coleman against A. V. Steelman, Guy Vince, Harold Shank, City Secretary of the City of Dallas, Texas, and Tom E. Ellis, County Clerk of Dallas County, Texas. Plaintiffs sought a judicial determination whether or not a certain area located in the City of Dallas was within a "dry" territory where the sale of alcoholic beverages is prohibited by the laws of the State of Texas.

The defendants Steelman and Vince were lessees of a certain tract of land located in the City of Dallas which was either adjacent to or close to White Rock Creek. They desired to build a building on such property in which to operate a liquor store but prior to constructing such building lessees sought a determination from the City Secretary of

the City of Dallas and the County Clerk of Dallas County to the effect that the area in question was a "wet" area where the sale of alcoholic beverages would be authorized under the laws of the State of Texas.

Plaintiffs Rosenfeld and Coleman operate a liquor store on Second Avenue in the City of Dallas, approximately three-quarters of a mile from the property under lease by Steelman and Vince. In an effort to protect their location as being the last location for a liquor store on Second Avenue going East, as well as the first liquor store going West on Second Avenue, Rosenfeld and Coleman made known to the City of Dallas and the County Clerk that if they certified the property in question as being a "wet" area where the sale of alcoholic beverages was authorized that such plaintiffs would then sue the City of Dallas and the County Clerk. Because of the opposition raised by Rosenfeld and Coleman the City Secretary of the City of Dallas and the County Clerk declined to certify the area in question as being either a wet area or a dry area, but took the position that they would only act on the application after the question had been adjudicated in a court of proper jurisdiction. After Rosenfeld and Coleman had brought this action seeking a declaratory judgment the district judge raised the question as to whether or not there was a justiciable controversy between Rosenfeld and Coleman and the other parties involved. Thereupon counsel for Steelman and Vince advised the court that he would amend his pleadings and create a justiciable controversy between his clients and the City of Dallas and County of Dallas. Thereupon Steelman and Vince filed a trial amendment alleging their leasehold interest in the real estate in question, and that a bona fide controversy existed between them and the City Secretary and County Clerk of Dallas County in that said officials had declined to certify the area in question as being an area where the sale of alcoholic beverages was au-

thorized and that Steelman and Vince were entitled to a determination of such rights. They sought an order directing the City Secretary and County Clerk to certify the area in question as being wet territory.

The case proceeded to trial before the court without a jury and at the conclusion of the testimony an order was entered finding and declaring that the sale of alcoholic beverages is not lawful and is not legally permissible on the property in question and denied Steelman and Vince any relief.

Appellants Steelman and Vince through the medium of five points of error urge us to reverse the order of the district judge. We find it unnecessary to pass upon or consider these points for the reason that there is apparent in this record the absence of a necessary party thereby presenting a jurisdictional defect requiring reversal of the judgment.

In a brief filed by John Harrison, attorney at law, as *amicus curiae,* our attention is directed to the fact that J. B. Lesley is the owner in fee simple of the land in question in this declaratory judgment action; that appellants Steelman and Vince are lessees and J. B. Lesley is lessor of the property in controversy,[1] and that the lease between the parties appears in this record as Defendants' Exhibit No. 16. *Amicus curiae* directs our attention to the fact that Mr. Lesley was not a party to this action; that he took no part in the trial of the case, and that as such owner and lessor of the land in question he has an interest in the declaratory proceedings to such an extent that he is a necessary and indispensable party to the action.

The Texas Uniform Declaratory Judgments Act, Art. 2524–1, Sec. 11, Vernon's Annotated Civil Statutes, provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights

---

1. Lesley is also lessor of premises occupied by Rosenfeld and Coleman.

of persons not parties to the proceeding." [2]

The courts generally recognize that this provision is mandatory and that a court should decline to consider a case on the merits until all the interested persons have been made parties. 22 Am.Jur.2d, § 80, p. 943; 71 A.L.R.2d, § 4, p. 730, et seq. The rules applicable to other civil actions in determining whether a person is interested and therefore essential to the action are applicable in suits for declaratory judgment. Texas Agricultural Workers' Union v. Isbell, Tex.Civ.App., 195 S.W.2d 206.

This court, speaking through Chief Justice Dixon, in the recent case of Dorn v. Cartwright, Civ.App., 392 S.W.2d 181, had occasion to discuss the question of necessary parties in a declaratory judgment suit. After considering the applicable authorities on the question we there held that one who had a direct interest in the property and in the outcome of the case was a necessary and indispensable party without whose presence a valid judgment could not be rendered.

In Petroleum Anchor Equipment, Inc. v. Tyra, Civ.App., 392 S.W.2d 873, we had occasion to again discuss and pass upon the question of necessary and indispensable parties. After a comprehensive review of all of the authorities,[3] we discussed the decision of our Supreme Court in Royal Petroleum Corp. v. Dennis, 160 Tex. 392, 332 S.W.2d 313, in which it was said:

"The term 'necessary parties' has also been defined as 'persons who have such an interest in the controversy that a final judgment or decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final adjudica-

tion may be wholly inconsistent with equity and good conscience.' " (Citing authorities.)

There are numerous Texas decisions dealing with the question of necessary parties, each turning upon the factual situation therein presented. The key to the issue is the interest of the absent party.

Thus in Nixon v. Cowan, 134 Tex. 262, 135 S.W.2d 96, opinion adopted by the Supreme Court, it was held that where conflicting interests of plaintiff and defendants under their respective mineral leases were both deraigned from a corporation as common lessor, the corporation was an indispensable party to the litigation, especially when the lease discloses a contention of interest by lessor.

Again, in Suburban Club, Inc. v. State, (Tex.Civ.App.) 222 S.W.2d 321, Justice Cramer, speaking for this court, said that while the owner of leased premises would not be a necessary party in a temporary injunction against lessees who operated a club such owner was a necessary party in a final hearing to determine whether the club should be padlocked.

In the light of these authorities the question directly before us is whether Lesley is one who has or claims an interest in the subject matter of this litigation which would be affected by the declaration of the court. We think that the question must be answered in the affirmative for several reasons.

Since the interest and rights of Lesley in and to the premises in question are governed by the terms and conditions of the lease agreement between Lesley and Steelman and Vince, we look to the lease provisions.

Paragraph II of the lease agreement provides that lessees will pay to lessor, as

2. It has been held that the latter portion of the statute should not ordinarily be relied upon by the courts as authority to proceed to judgment without the presence of all necessary parties. Town of Morganton v. Hutton & Bourbonnais Co., 247 N.C. 666, 101 S.E.2d 679; St. John's

Baptist Society, etc. v. Ukranian Nat. Ass'n, 105 N.J.Eq. 69, 146 A. 886.

3. In addition to the authorities cited see Annotation in 71 A.L.R. 723, et seq., enumerating cases construing Section 11 of the Uniform Declaratory Judgments Act.

rent, the sum of $1,800 per year, or the sum of $150 per month, in advance, for a full lease term of twenty years, aggregating a total rental of $36,000.

Paragraph VII provides that in default of payment of the rent, or in the keeping of any other covenant or condition of the lease agreement, lessor is given the right to re-enter the premises and remove all persons in possession and either re-let the premises for the best price obtainable for the remainder of the lease term or cancel the lease agreement.

Paragraph III of the lease agreement recites that the lessees are in the process of seeking a rezoning of the property to allow them to carry on a "food, drink and drive-in restaurant business" and that the beginning date of the lease and the first rent payment thereunder should be due ninety days following the date of said rezoning, or whenever improvements to be made on subject property have been completed by the lessees, but in no event shall the effective date be deferred for more than six months following date of lease.

Paragraph XIV of the lease provides that all improvements placed upon the demised premises by lessees shall become annexed to the realty and belong to lessor either at termination or cancellation of lease.

Paragraph XXI obligates the lessor to level off the surface area of the premises by the filling in with dirt so as to make it "usable by the Lessees and * * * patrons of the Lessees * * * for uses and purposes to which the Lessees expect to put the same."

Paragraph IX of the lease agreement provides:

"It is an express and understood agreement of this lease agreement, that the Lessor reserves unto himself, his heirs and assigns, the right to place any sign or signs on the leased premises that do not obstruct the normal view of the Lessees' business, and further,

the Lessor shall be entitled to receive and retain any and all rentals that may be received from said signs."

Paragraph X of the lease agreement obligates lessees to defend lessor on any claims for damages to property or persons growing out of or incidental "to the manner in which the Lessees operate said business" and upon failure of lessees to so defend lessor is authorized to obtain defense counsel for such suit or suits.

In Paragraph XIX it is recited that the application of lessees for rezoning the subject property also includes additional contiguous property owned by lessor; that lessees are granted an option to lease such additional areas in the event of favorable action on the application for change of status.

It is thus to be observed that the lease agreement between the parties is not in the usual or standard form but contains express provisions which delineate the rights and interest of the landowner in the premises covered by the agreement. The leasehold estate is subject to reverter on non-payment of any monthly installment or rent. Accordingly, the event of reverter may occur at the end of any calendar month. The beginning date of the lease agreement itself is made contingent upon the rezoning by the City and thus the landowner has a direct interest in seeing that such contingency occurs as early as possible.

Paragraph IX of the lease agreement, copied above, expressly reserves unto the landowner a stated interest in the property, namely, to place signs thereon and to collect rents therefor. It is not unreasonable to assume that the owner's reserved right for advertising purposes might conceivably be inimical to the use of the property contemplated by lessees should the area be declared "wet". This express reservation of interest in the leasehold is, within itself, sufficient to demonstrate such an interest in the property as would require the presence of the owner at any litigation of the character now before us.

■ An analysis and study of this record clearly reveals an overall picture to the effect that the leasehold estate was created, in large measure, conditioned upon change of legal status of the property so that same could be utilized for the sale of liquor. This is emphasized by the fact that no improvements have been constructed upon the demised premises pending determination of the legal question presented by the suit for declaratory judgment. Thus the fee owner Lesley becomes vitally interested in the outcome of this litigation and to comply with the express terms of the Uniform Declaratory Judgments Act he should be made a party.

■■ Appellees seek to avoid the rule requiring joinder of the fee owner in this case by alleging that Lesley was personally acquainted with the pendency of the lawsuit and should have voluntarily made himself a party. We cannot agree with this contention. In McDonald v. Miller, 90 Tex. 309, 39 S.W. 89, 95, we find this statement of the rule that is applicable here:

> "To make one having an interest in an action a party, the petition must make him a party; and, if he does not voluntarily appear, he must be cited. That he knows of the existence of the suit, and could have intervened, makes no difference. The right of intervention, which is allowed by our laws, is a privilege, and not a duty."

See also Shaffer v. Schaleben, Tex.Civ. App., 236 S.W.2d 234, and Merritt, et al. v. Ryno, Tex.Civ.App., 268 S.W.2d 546.

It is our opinion, and we so hold, that the record in this case demonstrates that a final judgment or decree in this case cannot be made without either affecting the interest of Lesley or leaving the controversy in such a condition that its final adjudication would be wholly inconsistent with equity and good conscience. Royal Petroleum Corp. v. Dennis, 160 Tex. 392, 332 S.W.2d 313.

For these reasons the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings. All costs herein are assessed against the appellees Rosenfeld and Coleman.

Reversed and remanded.